Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Cindy Chan (SBN 247495)
cchan@blakelylawgroup.com
Jessica C. Covington (SBN 301816)
jcovington@blakelylawgroup.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Plaintiff*
*E-Hose Technologies LLC and*
*PhD Marketing, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| E-HOSE TECHNOLOGIES LLC, a California Limited Liability Company; and PhD MARKETING, INC., a California Corporation,<br><br>                Plaintiffs,<br><br>        v.<br><br>PRIMECO WHOLESALE, INC., a California Corporation; NOR KHALIL HADDAD, an individual;  BOSS WHOLESALE CORPORATION; a New Jersey Corporation; J&L WHOLESALE DISTRIBUTORS, a Pennsylvania Corporation, and DOES 1-10, inclusive,<br><br>           Defendants. | CASE NO. 2:14-CV-08600-R-AS<br><br>**PLAINTIFFS' NOTICE OF AND APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS BOSS WHOLESALE CORPORATION AND J&L WHOLESALE DISTRIBUTORS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing:<br><br>Date:      Monday, August 3, 2015<br>Time:     10:00 am<br>Courtroom:  8 – 2nd Floor<br><br>**Honorable Manuel Real** |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **Monday, August 3, 2015,** at **10:00 am** or as soon thereafter as this matter may be heard by the Court, located at 312 North Spring Street, Los Angeles, CA 90012-4701, Courtroom 8-2nd Floor, Plaintiffs PhD Marketing, Inc. and E-Hose Technologies LLC will present their Application for

Default Judgment against Defendants Boss Wholesale Corporation and J&L Wholesale Distributors pursuant to Federal Rule of Civil Procedure 55 on the claims alleged in Plaintiffs' First Amended Complaint ("FAC").

At the time and place of hearing, Plaintiffs will present proof of the following matters:

1.      Plaintiffs filed the present lawsuit against Defendants Primeco Wholesale, Inc. and Khalil Haddad (collectively "Primeco") on November 05, 2014 for Federal Trademark Infringement, False Designations of Origin and False Descriptions, Unfair Competition, and Common Law Trademark Infringement and Unfair Competition after discovering the advertisement, offering for sale, and/or sale of products bearing counterfeit reproductions of  Plaintiffs federally registered "E-HOSE" and SQUARE marks ("Infringing Products") at Primeco Wholesale, Inc. (Declaration of Jessica C. Covington ("Covington Dec."), ¶ 2, Ex. 1)

2.      On January 06, 2015, Plaintiffs filed a First Amended Complaint (Docket #14) adding Defendant J&L Wholesale Distributors ("J&L") and Defendant Boss Wholesale Corporation ("Boss") after discovering that J&L supplied the Infringing Products to Defendant Boss which in turn supplied same to Defendants Primeco and Haddad.  (Covington Dec., ¶ 3)

3.      Copies of the First Amended Complaint and Summons were personally served on J&L on January 8, 2015. (Covington Dec., ¶ 7; Docket #17)

4.      On January 26, 2015 copies of the First Amended Complaint were served on Defendant Boss. (Covington Dec., ¶ 8; Docket #22)

5.      On March 17, 2015, the clerk of this Court entered default against Defendants J&L and Boss (collectively "Defaulting Defendants") after said Defendants failed to file an answer to the FAC or otherwise make an appearance in this action.  (Covington Dec., ¶ 10, Docket #26)

6.     The Defaulting Defendants are corporations and are thus not infants or incompetent persons or in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. (Covington Dec., ¶ 13)

7.     Notice of this Motion for Default Judgment was served on Defaulting Defendants on June 12, 2015 pursuant to Local Rule 55-1 and FRCP 55(b)(2). (Covington Dec., ¶14; Proof of Service filed concurrently herewith)

8.     Plaintiffs are entitled to a default judgment against Defaulting Defendants on account of the claims set forth in its First Amended Complaint.

9.     The Judgment sought against Defaulting Defendants consists of the sum of $1,137,900.88 and the costs of this action.

This Motion for Default Judgment is based on this Notice, the Declaration of Jessica C. Covington, the Memorandum of Points and Authorities in support of this Motion for Default Judgment, and the pleadings, files and other matters that may be presented at the hearing.


DATED:     June 12, 2015          BLAKELY LAW GROUP


By:     /s/ Jessica C. Covington
        Brent H. Blakely
        Cindy Chan
        Jessica C. Covington
        *Attorneys for Plaintiffs*
        *E-Hose Technologies LLC and*
        *PhD Marketing, Inc.*

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................1

I.       INTRODUCTION .................................................................................1

II.      STATEMENT OF FACTS ....................................................................1

         A.      Plaintiffs' E-Hose Marks ...................................................1

         B.      Defaulting Defendants' Infringing Activities ................................3

         C.      Defaulting Defendants' Failure to Litigate ..................................4

III.     LEGAL ARGUMENT ...........................................................................4

         A.      Legal Standard for Entry of Default and Default Judgment ...........4

                 1.      Possibility of Prejudice In Event Default Judgment is Not
                         Issued ...................................................................5

                 2.      Merits of Substantive Claims and Sufficiency of the First
                         Amended Complaint ..........................................................5

                         (a)      Federal Trademark Counterfeiting, Trademark
                                  Infringement, and Unfair Competition Claims ..........5

                         (b)      False Designation of Origin and False Description....6

                 3.      Sum of Money at Stake .....................................................7

                 4.      Possibility of Dispute Concerning Material Facts...............8

                 5.      Whether Default was Due to Excusable Neglect .................8

                 6.      Strong Policy Underlying the Federal Rules of Civil
                         Procedure ...................................................................8

         B.      Plaintiffs Are Entitled To Statutory Damages Under the
                 Lanham Act ...................................................................8

                 Section 1117(c) of the Lanham Act provides, in pertinent part:.....8

                         (a)      Expenses Saved and Profits Reaped by Defaulting
                                  Defendants (Factors 1 and 6)....................................10

        (b)    Revenues Lost by Plaintiffs ........................................11

        (c)    Value of the E-Hose Marks ......................................11

        (d)    Deterrent Effect on Defaulting Defendants  and Others (Factors 4 and 7) .............................................12

        (e)    Willfulness of Defaulting Defendants' Infringing Acts ...........................................................................13

C.     Plaintiffs are Entitled to Recovery of Their Attorneys' Fees and Costs ..............................................................................13

D.     Plaintiffs are Entitled to Prejudgment Interest ...............................14

E.     Plaintiffs are Entitled to a Permanent Injunction ...........................15

IV.    CONCLUSION ...................................................................................16

# <u>TABLE OF AUTHORITIES</u>

Cases

Alu, Inc. v. Kupo Co., Inc.,
    2007 WL 177836 (M.D. Fla., 2007) ................................................................ 14

Apple Computer, Inc. v. Franklin Computer Corp.,
    714 F.2d 1240 (3rd Cir. 1983) ........................................................................ 16

Atek 3000 Computer Inc.,
    2008 WL 2884761  (E.D.N.Y. 2008) ............................................................. 16

Brighton Collectibles, Inc. v. Coldwater Creek Inc.,
    2009 WL 160235 (S.D. Cal. 2009) ................................................................. 15

Brookfield Communications v. West Coast Entertainment,
    174 F.3d 1036 (9th Cir. 1999) .......................................................................... 6

Cadence Design Sys., Inc. v. Avant! Corp.,
    125 F.3d 824 (9th Cir.1997) ........................................................................... 16

Chanel, Inc. v. Lin,
    2010 WL 2557503 (N.D. Cal. 2010) ............................................................... 15

Chloe SAS v. Sawabeh Information Services Co.,
    2014 WL 4402218 (C.D. Cal. Sept. 05, 2014) ................................................. 6

Conversive, Inc. v. Conversagent, Inc.,
    433 F.Supp.2d 1079 (C.D. Cal. 2006) .............................................................. 6

Derek Andrew, Inc. v. Poof Apparel Corp.,
    528 F.3d 696 (9th Cir. 2008) ..................................................................... 13, 14

Dr. JKL Ltd. v. HPC IT Education Center,
    749 F.Supp.2d 1038  (N.D. Cal., 2010) ........................................................... 8

E. & J. Gallo Winery v. Consorzio del Gallo Nero,
    782 F. Supp. 457 (N.D. Cal. 1991) .................................................................. 8

eAdgear, Inc. v Liu
    2012 U.S. LEXIS  (N.D. Cal. June 21, 2012) ................................................... 7

Eitel v. McCool,
    782 F.2d 1470 (9th Cir. 1986) .......................................................................... 4

Geddes v. United Financial Group,
    559 F.2d 557 (9th Cir. 1977) ............................................................................ 4

Gucci America, Inc. v. Duty Free Apparel, Ltd.,
    286 F. Supp. 2d 284 (S.D.N.Y. 2003) .............................................................. 6

Herman Miller Inc. v. Alphaville Design Inc.,
    2009 WL 3429739 (N.D. Cal. Oct. 22, 2009) ................................................. 13

Hesmer Foods, Inc. v. Campbell Soup Co.,
    346 F.2d 356  (9th Cir.1965) ............................................................................ 7

Kingvision Pay-Per-View, Ltd. v. Rivers,
     2000 WL 356378 (N.D.Cal. 2000) ................................................. 5

Lau Ah Yew v. Dulles,
     236 F.2d 415 (9th Cir. 1956) ....................................................... 4

Lindy Pen Co., Inc. v. Bic Pen Corp.,
     982 F.2d 1400  (9th Cir.1993) .................................................... 12

Lorillard Tobacco Co. v. Montrose Wholesale Candies and Sundries,Inc.,
     2007 WL 2580491 (N.D. Ill. 2007 ............................................. 11

Louis Vuitton Malletier S.A. v. LY USA, Inc.,
     676 F.3d 83 (2d Cir. 2012) ....................................................... 13

Microsoft Corp. v. Coppola,
     2007 WL 1520964 (N.D. Cal. May 24, 2007) ............................. 10

Microsoft Corp. v. Nop,
     549 F.Supp.2d 1233 (E.D. Cal. 2008) ......................................... 10

Oracle USA, Inc. v. Qtrax, Inc.,
     2011 WL 4853436 (N.D. Cal. 2011) .......................................... 15

Pacific–Southern Mortg. Trust Co. v. Ins. Co. of N.Am.,
     166 Cal.App.3d 703  (1985) ...................................................... 15

Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172  (C.D. Cal., 2002)..... 7, 8, 15

Philip Morris USA, Inc. v. Castworld Products, Inc.,
     219 F.R.D. 494, 502 (C.D. Cal. 2003) ..................................... 9, 13

Phillip Morris USA, Inc. v. Shalabi,
     352 F.Supp.2d 1067 (C.D. Cal., 2004) ......................................... 6

Playboy Enters., Inc. v. Baccarat Clothing Co.,
     692 F.2d 1272  (9th Cir.1982) ............................................... 12, 14

Ploom, Inc. v. Iploom, LLC,
     2014 WL 1942218 (N.D. Cal. May 12, 2014) ............................. 13

Rio Properties, Inc. v. Rio Int'l Interlink,
     284 F.3d 1007 (9th Cir., 2002) ................................................. 14

Sara Lee Corp. v. Bags of New York, Inc.,
     36 F.Supp.2d 161 (S.D.N.Y., 1999) ........................................... 11

Smith v. Chrome Hearts, Inc.,
     402 F.2d 562 (9th Cir.1968) ....................................................... 7

Stanley Black & Decker, Inc. v. D&L Elite Investments, LLC,
     2014 WL 3728517 (N.D. Cal. July 28, 2014) ............................. 13

Tiffany, Inc. v. Luban,
     282 F.Supp.2d 123 (S.D.N.Y. 2003) ......................................... 10

Wecosign, Inc. v. IFG Holdings, Inc.,
   845 F.Supp.2d 1072 (C.D. Cal. 2012) ............................................................. 14

## STATUTES

15 U.S.C. § 1116 (a) ........................................................................................... 15

15 U.S.C. § 1117(a) ..................................................................................... 13, 14

15 U.S.C. § 1117(b) ............................................................................................ 14

15 U.S.C. § 1125(a) .............................................................................................. 6

15 U.S.C. § 1114(a)(1) .......................................................................................... 6

15 U.S.C. § 1117(c) ......................................................................................... 9, 13

15 U.S.C. § 1127 .................................................................................................... 6

15 U.S.C. § 1116(d) ............................................................................................... 9

17 U.S.C. § 504(c) .............................................................................................. 10

FRCP 55 (a) ........................................................................................................... 8

FRCP Rule 55(b) ................................................................................................... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

On November 05, 2014, Plaintiffs PhD Marketing, Inc. and E-Hose Technologies LLC ("collectively "Plaintiffs" or "E-Hose") filed the present lawsuit against Defendants Primeco Wholesale, Inc. and Khalil Haddad (collectively "Primeco") after discovering the advertisement, offering for sale, and/or sale of products bearing marks substantially indistinguishable and/or confusingly similar to Plaintiffs' federally registered "E-HOSE" and SQUARE marks ("Infringing Products") at Primeco Wholesale, Inc. Such products were shipped to and received in this judicial district. Thereafter, Plaintiffs discovered that Defendant J&L Wholesale Distributors ("J&L") supplied the Infringing Products to Defendant Boss Wholesale Corporation ("Boss"), which in turn supplied same to Defendants Primeco and Haddad; and Plaintiffs amended the Complaint to add J&L and Boss as defendants. (See First Amended Complaint ("FAC"), Docket #14)

On January 8, 2015, copies of the First Amended Complaint and Summons were personally served on Defendant J&L, and on January 26, 2015 copies of the First Amended Complaint and Summons were served on Defendant Boss. On March 17, 2015, the court entered default against J&L and Boss ("collectively, "Defaulting Defendants") after Defaulting Defendants failed to answer or file a responsive pleading. Plaintiffs have satisfied the requirements of FRCP 55. Plaintiffs respectfully request that this Court grant its Application for Default Judgment against Defaulting Defendants.

## II.  STATEMENT OF FACTS

### A.    Plaintiffs' E-Hose Marks

Since 2013, E-Hose has been engaged in the design, distribution, and sale of electronic smoking products, including electronic cigarettes and hookahs. (FAC, ¶ 13) Since its introduction in January 2013, E-hose's "E-HOSE," an electronic portable hookah, quickly gained popularity as a result of its engineering and design. (FAC, ¶

14) The E-HOSE® patented design uses two flavor cartridges in a large device and allows for those two cartridges to be used at once; and this technique delivers more vapor, more flavor, and a means to mix and match flavors. (FAC, ¶ 15) The E-HOSE has received much unsolicited media attention in its trade and was featured in Akon's new music video and Kid Ink's "Show Me" music video featuring Chris Brown. (FAC, ¶ 17) E-Hose and/or PhD Marketing own and/or are the duly authorized licensees of the following trademarks shown below ("E-Hose Marks"). (FAC, ¶ 18):

| Trademark | U.S. Reg./Serial No. | Class(es)/Goods |
|---|---|---|
| **E-HOSE** | 4,463,945 | Chemical flavorings in liquid form contained within a cartridge used to refill electronic cigarettes |
| | 4,456,664 | Cigarette tubes; Electric cigarettes; Electronic cigarette refill cartridges sold empty; Electronic cigars; Electronic hookahs; Hookah parts, namely, tube and hose; Hookah tobacco; Hookahs; Smokeless cigarette vaporizer pipe; Smoker's articles, namely, hookah charcoal. |
| SQUARE | 4, 005,820 | Electric cigarettes ; Electric cigars ; Electric smoking pipes. |

Registrations for many of the E-Hose Marks, including those set forth above, are valid, subsisting and are incontestable. (Covington Decl., ¶ 11) E-Hose has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the E-Hose Marks. (FAC, ¶ 19) As a result of E-Hose's efforts, members of the consuming public readily identify merchandise bearing the E-Hose Marks, as being high quality merchandise sponsored and approved by E-Hose. (FAC, ¶ 21) All registrations for applicable intellectual property rights thereto with regards to the E-Hose Marks originally held in the name of E-Hose were licensed to PhD Marketing, Inc., on or about November 22, 2013. (FAC, ¶ 22)

**PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT**

**B.    Defaulting Defendants' Infringing Activities**

The present action was filed after Plaintiffs discovered that Defendant Primeco Wholesale, Inc. has manufactured, designed, advertised, marketed, distributed, offered for sale, and/or sold Infringing Products at Primeco Wholesale, Inc., located at 159 West Harris Avenue, South San Francisco, California 94080. Such products were shipped to and received in this Judicial District. (FAC, ¶¶ 23-24)

  



Thereafter, Plaintiffs discovered that Defendant J&L Wholesale Distributors supplied the Infringing Products to Defendant Boss Wholesale Corporation, which in turn supplied same to Defendant Primeco Wholesale, Inc. (Covington Decl., 4-5, Exs. 2-3) Plaintiffs amended the Complaint adding J&L Wholesale Distributors and Boss Wholesale Corporation  as a party defendants.  (Covington Decl., ¶ 3)

Defaulting Defendants have never been authorized by E-Hose to manufacture, sell or offer for sale E-Hose products or any products bearing any of the E-Hose Marks. Moreover Defaulting Defendants have never been licensees of E-Hose and have been licensed in any manner to import, sell, distribute, or manufacture any merchandise bearing the E-hose Marks. (FAC, ¶ 28)

### C.     Defaulting Defendants' Failure to Litigate

On January 06, 2015, Plaintiffs filed the FAC (Docket #14) adding Defaulting Defendants after discovering that J&L was the source of the Infringing Products to Boss.  (Covington Dec., ¶ 3)  Copies of the FAC and Summons were personally served on Defendant J&L on January 8, 2015. (Covington Dec., ¶ 7; Docket #17) On January 26, 2015 copies of the FAC and Summons were personally served on Defendant Boss. (Covington Dec., ¶ 8; Docket #22) To this date, Defaulting Defendants have not filed answers and/or responsive pleadings to Plaintiffs' FAC. (Covington Dec. ¶ 9) Subsequently, on March 17, 2015, the clerk of this Court entered default against Defendants J&L and Boss.  (Covington, Dec., ¶ 10, Docket #26)

## III.   <u>LEGAL ARGUMENT</u>

### A.     Legal Standard for Entry of Default and Default Judgment

Pursuant to FRCP Rule 55(b) , a default judgment may be entered by the clerk as well as by the court.  FRCP 55(b) (2) governs applications to the Court for a judgment by default. [<u>Lau Ah Yew v. Dulles</u>, 236 F.2d 415 (9th Cir. 1956)]

In the Ninth Circuit, a district court may consider the following factors in exercising its discretion to award a default judgment:  (1) the possibility of prejudice to the Plaintiffs, (2) the merits of Plaintiffs' substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  [<u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986)]

In applying this discretionary standard, the factual allegations contained in Plaintiffs' complaint will be taken as true, except for those relating to the amount of damages. [<u>Geddes v. United Financial Group</u>, 559 F.2d 557 (9th Cir. 1977); <u>Televideo Systems, Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987); <u>Kingvision Pay-Per-View, Ltd. v. Rivers</u>, 2000 WL 356378, *1 (N.D.Cal. 2000)]

### 1.   *Possibility of Prejudice In Event Default Judgment is Not Issued*

Plaintiffs would be extremely prejudiced if default judgment was not granted against Defaulting Defendants. Through the sale and offer for sale of Infringing Products, Defaulting Defendants have injured Plaintiffs' reputations as well as Plaintiffs' businesses.  Specifically, consumers who purchased the Infringing Products may have been confused as to their source, believing them to be genuine E-Hose products, and were likely disappointed by the inferior quality, design and style of the Infringing Products.

Since Defaulting Defendants have not responded to this lawsuit and have not engaged in any meaningful discovery in the matter, it is likely that they have continued and will continue their infringing activities, causing even further injury to Plaintiffs. As such, if default judgment is not granted, Plaintiffs will be left with no recourse for injuries to their reputations and businesses caused by Defaulting Defendants' infringing activities, as well as for their efforts in litigating this case.

### 2.   *Merits of Substantive Claims and Sufficiency of the First Amended Complaint*

With respect to the merits of Plaintiffs' substantive claim (second factor) and the sufficiency of the FAC (third factor), Plaintiffs have set forth a well-pleaded FAC, and have listed all the essential facts and elements as to each of its causes of action against Defaulting Defendants.

### (a)   Federal Trademark Counterfeiting, Trademark Infringement, and Unfair Competition Claims

To prevail on their trademark infringement claim, Plaintiffs must prove that, without their consent, Defaulting Defendants used in commerce copies of Plaintiffs' registered trademarks in connection with the sale or advertising of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers. [15 U.S.C. §1114(a)(1); Brookfield Communications v. West Coast Entertainment, 174 F.3d 1036, 1046 (9th Cir. 1999)] 15 U.S.C. § 1127 provides in part that an

infringing mark amounts to a counterfeit mark if the infringing mark, "is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  If Plaintiffs show that Defaulting Defendants have used counterfeit trademarks in commerce, the claim for trademark infringement is also satisfied.  [Chloe SAS v. Sawabeh Information Services Co., 2014 WL 4402218, *6 (C.D. Cal. Sept. 05, 2014)]

Plaintiffs have properly alleged the necessary elements as to their cause of action for trademark counterfeiting and trademark infringement. The FAC identifies Plaintiffs' ownership of and exclusive rights to use the E-Hose Marks. (FAC, ¶¶ 18, 20, 22) The FAC further alleges that Defaulting Defendants have supplied the Infringing Products.  (FAC, ¶26)

Likelihood of confusion is presumed in a case where, as here, Defaulting Defendants have manufactured, sold or distributed counterfeit goods.  [Phillip Morris USA, Inc. v. Shalabi, 352 F.Supp.2d 1067, 1073 (C.D. Cal., 2004) citing to Gucci America, Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("counterfeits, by their very nature, cause confusion")]  The standard for Lanham Act trademark infringement, unfair competition, and California common law is the same. [Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1093–94 (C.D. Cal. 2006) citing to Brookfield, 174 F.3d at 1045]

As such, Plaintiffs have properly alleged the necessary elements as to their causes of action for trademark counterfeiting, trademark infringement, and unfair competition.

(b)     False Designation of Origin and False Description

To prevail on their claim for false designation of origin and false description, Plaintiffs must prove that Defaulting Defendants, in connection with their goods or services, used in commerce a designation of origin that is likely to cause confusion among consumers.  [15 U.S.C. § 1125(a)] Under the Lanham Act, the ultimate test is whether a defendant's false designation is likely to cause confusion among consumers. [eAdgear, Inc. v Liu 2012 U.S. LEXIS, 31 (N.D. Cal. June 21, 2012)  citing Smith v.

1  <u>Chrome Hearts, Inc.</u>, 402 F.2d 562, 563 (9th Cir.1968); <u>Hesmer Foods, Inc. v.</u>

2  <u>Campbell Soup Co.</u>, 346 F.2d 356, 359 (9th Cir.1965)]

3       Plaintiffs properly demonstrate that Defaulting Defendants' unauthorized use of

4  Plaintiffs' E-Hose Marks on infringing merchandise in interstate commerce and

5  advertising relating to same constitutes false designation of origin and a false

6  representation that the goods and services are manufactured, offered, sponsored,

7  authorized, licensed by or otherwise connected with Plaintiffs or come from the same

8  source as Plaintiffs' goods and are of the same quality as that assured by the E-Hose

9  Marks when in fact they are not. (FAC, ¶ 34)  Plaintiffs also assert that Defaulting

10 Defendants' activities are likely to lead to and result in confusion, mistake or

11 deception, and are likely to cause the public to believe that Plaintiffs have produced,

12 sponsored, authorized, licensed or are otherwise connected or affiliated with

13 Defendants' commercial and business activities, all to the detriment of Plaintiffs.

14 (FAC, ¶ 36)

15       As such, Plaintiffs have properly alleged the necessary elements as to their cause

16 of action for false designation of origin and false description.

17            ***3.    Sum of Money at Stake***

18       With respect to the fourth factor, "the court must consider the amount of money

19 at stake in relation to the seriousness of Defendant's conduct."  [<u>Pepsico, Inc. v. Cal.</u>

20 <u>Sec. Cans</u>, 238 F. Supp. 2d 1172, 1176 (C.D. Cal., 2002) ]  Defaulting Defendants

21 have engaged in transactions involving the sale and distribution of infringing products.

22 Defaulting Defendants' actions have caused damage to Plaintiffs' reputation and have

23 likely diverted profits away from Plaintiffs, as the legitimate owners of the E-Hose

24 Marks.

25       Defaulting Defendants have engaged in the unauthorized sale and advertisement

26 of products that infringe upon Plaintiffs' registered trademarks. Therefore, Plaintiffs

27 are entitled to recover statutory damages under the Lanham Act.  [<u>Dr. JKL Ltd. v. HPC</u>

28 <u>IT Education Center</u>, 749 F.Supp.2d 1038 (N.D. Cal., 2010)]  Given Defaulting

Defendants' willful infringement of the E-Hose Marks and failure to comply with the judicial process or to participate in the present litigation, imposition of a monetary award is warranted. Accordingly, this factor favors granting default judgment.

### 4.   Possibility of Dispute Concerning Material Facts

Plaintiffs have satisfied the fifth <u>Eitel</u> factor as well, since all well-pleaded facts in the Complaint are to be taken as true upon entry of default. In this case, Plaintiffs have filed a well-pleaded FAC alleging the facts necessary to establish their claims, and this Court has entered default against Defaulting Defendants. Balancing the <u>Sleekcraft</u> factors, Plaintiffs have established that Defaulting Defendants' use of the E-Hose Marks would lead to a likelihood of confusion sufficient to show there is no genuine issue as to any material fact. [See <u>E. & J. Gallo Winery v. Consorzio del Gallo Nero</u>, 782 F. Supp. 457, 459, 467 (N.D. Cal. 1991)

### 5.   Whether Default was Due to Excusable Neglect

Defaulting Defendants have had nearly five months to file a responsive pleading in this action since they were properly served with the Summons and First Amended Complaint in or around January 2015.  To date, Defaulting Defendants have failed to file an answer or otherwise make an appearance in this case. Such behavior by Defaulting Defendants should in no way be seen as excusable neglect.

### 6.   Strong Policy Underlying the Federal Rules of Civil Procedure

Defaulting Defendants have failed to set forth any type of defense to this action. Under FRCP 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." [<u>Id</u>. See also <u>Pepsico</u>, 238 F.Supp.2d at 1177 (C.D. Cal. 2002] Therefore, the seventh factor also favors granting a default judgment in favor of Plaintiffs.

### B.   Plaintiffs Are Entitled To Statutory Damages Under the Lanham Act

Section 1117(c) of the Lanham Act provides, in pertinent part:

> "(c) In a case involving the use of a counterfeit mark (as defined in section 34(d) (15 U.S.C. 1116(d)) in connection with the sale, offering for sale, or distribution of goods or

services, Plaintiffs may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of– (1) not less than $ 1,000 or more than $ 200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" [15 U.S.C. § 1117(c)]

Where the court finds that use of the counterfeit mark was willful, plaintiff is entitled to up to $2 million in statutory damages per counterfeit mark per type of goods sold, offered for sale, or distributed. [15 U.S.C. § 1117(c); Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 502 (C.D. Cal. 2003)]

Since the focus of the statutory damages provision under §1117(c) is of deterrence, statutory damages do not need to equal the amount of plaintiff's actual damages. [Philip Morris, 219 F.R.D. at 501] In Phillip Morris, the Court awarded $1 million per mark (the statutory maximum amount of damages at the time) against defendant despite the fact that the counterfeit cigarettes were seized by U.S. Customs and defendant had yet to sell or distribute any of them. [Id. at 502] The court reasoned that statutory damages should be awarded to plaintiff under the Lanham Act in order to deter defendant and similarly situated counterfeiters from future trademark infringement and to compensate plaintiff for the damages caused by defendant's infringing activities. [Id. at 501].

Consistent with the ruling in Philip Morris, Plaintiffs seek to discourage Defaulting Defendants and those similarly situated to them from selling, offering for sale, or distributing products bearing counterfeit reproductions of the E-Hose Marks. If Defaulting Defendants were not required to pay statutory damages, their infringing activities would likely continue and expand, causing further damage to both Plaintiffs and the consuming public.

While the Lanham Act does not provide guidelines for courts to determine an appropriate award of statutory damages, courts have found guidance in the case law relating to the analogous provision for statutory damages in 17 U.S.C. § 504(c).

1   [Tiffany, Inc. v. Luban, 282 F.Supp.2d 123, 125 (S.D.N.Y. 2003); Microsoft Corp. v.

2   Nop, 549 F.Supp.2d 1233, 1237-38 (E.D. Cal. 2008)]  Pursuant to 17 U.S.C. § 504(c),

3   courts consider the following factors in determining the amount of statutory damages

4   to award:

> (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." [Id.]

10   "A court has wide discretion to determine the amount of statutory damages

11   between the statutory maxima and minima." [Microsoft Corp. v. Coppola, 2007 WL

12   1520964, *4 (N.D. Cal. May 24, 2007) (citing Harris v. Emus Records Corp., 734 F.2d

13   1329, 1335 (9th Cir.1984)]

14                    (a)    Expenses Saved and Profits Reaped by Defaulting

15                           Defendants (Factors 1 and 6)

16          In this case, each of these factors weighs in favor of enhanced statutory

17   damages. At the outset, Defaulting Defendants have not appeared in this case so

18   Plaintiffs are unable to calculate the expenses saved/profits reaped with precision.

19   Based on the invoices produced by Primeco in discovery in this action (see Covington

20   Dec., Exs. 2-3), Plaintiffs know that Boss purchased 65 units of Infringing Products

21   from J&L at a price of $74/unit and then sold 50 of these units to Primeco for $80/unit

22   (Covington Dec., ¶¶ 4-5, Exs. 2-3) it is reasonable to conclude that additional products

23   were sold by both Defaulting Defendants.  Indeed, the failure to maintain records of

24   infringing activities is quite common amongst trademark infringers. It is this precise

25   reason that Congress amended the Lanham Act to provide for statutory damages.

26   [Lorillard Tobacco Co. v. Montrose Wholesale Candies and Sundries, Inc., 2007 WL

27   2580491, *2 (N.D. Ill. 2007)] As the Senate Report noted:

28

1
2
3
4
5

> The committee recognizes that under current law, a civil litigant may not be able to prove actual damages if a sophisticated, large-scale counterfeiter has hidden or destroyed information about his counterfeiting. Moreover, counterfeiters' records are frequently nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible. Enabling trademark owners to elect statutory damages is both necessary and appropriate in light of the deception routinely practiced by counterfeiters.

6
7

[Senate Report No. 104-177, S. REP. 104-177, *10 (1995). See also <u>Sara Lee Corp. v. Bags of New York, Inc.</u>, 36 F.Supp.2d 161, 165 (S.D.N.Y., 1999)]

8
9

(b)    <u>Revenues Lost by Plaintiffs</u>

10
11
12
13
14
15
16
17
18

As discussed above, the exact amount of Infringing Products sold by Defaulting Defendants is not known to Plaintiffs, and thus Plaintiffs are unable to assess the revenues lost by Plaintiffs as a result of Defaulting Defendants' infringing activities. However, based upon information currently available, Plaintiffs have lost revenues in the amount of $13,000 at minimum (65 units at $200/unit). (Covington Dec., ¶¶ 4-6) Again, as discussed above, it is reasonable to conclude that the Defaulting Defendants likely distributed additional Infringing Products of which Plaintiffs are simply unaware because Defaulting Defendants have not appeared in this action and/or participated in discovery.

19
20

(c)    <u>Value of the E-Hose Marks</u>

21
22
23
24
25
26
27
28

Since 2013, E-Hose has been engaged in the design, distribution, and sale of electronic smoking products, including electronic cigarettes and hookahs. (FAC, ¶ 13) E-hose's "E-HOSE," an electronic portable hookah, quickly gained popularity as result of its engineering and design. (FAC, ¶ 14) The E-HOSE® patented design of an electronic portable hookah, uses two flavor cartridges in a large device and allows for those two cartridges to be used at once, a technique that delivers more vapor, more flavor, and a means to mix and match flavors. (FAC, ¶ 15) The E-Hose Marks are a symbol of Plaintiffs' quality, reputation, and goodwill and have never been abandoned. (Covington Decl. ¶12) Further, Plaintiffs have expended substantial time, money, and

11

other resources in developing, advertising, and otherwise promoting the E-Hose Marks. (FAC, ¶ 19) As a result of Plaintiffs' efforts, members of the consuming public readily identify merchandise bearing the E-Hose Marks as being high quality merchandise sponsored and approved by Plaintiffs.  (FAC, ¶ 21) Thus, this factor weighs heavily in favor of a higher amount of statutory damages.

(d)   Deterrent Effect on Defaulting Defendants  and Others (Factors 4 and 7)

The fourth and seventh factors relate to the deterrence policy underlying 15 U.S.C. § 1117(c). Indeed, the Ninth Circuit has articulated a deterrence policy to discourage trademark infringement. [See Playboy Enters., Inc. v. Baccarat Clothing Co., 692 F.2d 1272 (9th Cir.1982); Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1406 (9th Cir.1993) (citing Playboy Enterprises for the proposition that "this circuit has announced a deterrence policy in response to trademark infringement."] In Playboy Enterprises, the Ninth Circuit Noted:

> "In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement. Many consumers are willing to pay substantial premiums for particular items which bear famous trademarks based on their belief that such items are of the same high quality as is traditionally associated with the trademark owner… For these reasons, it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement."

Plaintiffs have a strong interest in deterring future infringing activities by Defaulting Defendants and others similarly situated. Plaintiffs have often been the target of trademark infringement. Such activities cause damage and harm to the brand and its reputation for high quality goods. Furthermore, the sale of infringing products diverts sales away from Plaintiffs themselves. If Defaulting Defendants were not required to pay enhanced statutory damages, their infringing activities would likely continue and expand, causing further damage to both Plaintiffs and the consuming public.

12

(e)     Willfulness of Defaulting Defendants' Infringing Acts

Where the court finds that use of the counterfeit mark was willful, Plaintiffs are entitled to up to $2 million in statutory damages per counterfeit mark per type of goods sold, offered for sale, or distributed. [15 U.S.C. § 1117(c); Philip Morris, 219 F.R.D. at 501]  An allegation of willful trademark infringement is deemed true on default. [Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 698 (9th Cir. 2008)]

The Infringing Products and their packaging consist of counterfeit reproductions of at least two of the E-Hose Marks set forth in the FAC ("E-HOSE" and SQUARE ). (FAC, ¶ 18; see also Covington Decl., ¶ 2-4, Ex. 1)  Pursuant to § 1117(c), Plaintiffs are entitled to up to $4 million in statutory damages.  However, Plaintiffs seek only **$1 million** in statutory damages ($500,000 per mark).

**C.     Plaintiffs are Entitled to Recovery of Their Attorneys' Fees and Costs**

The Lanham Act authorizes the award of attorneys' fees and costs. [15 U.S.C. § 1117(a)[1]]  Under the Lanham Act, the prevailing party may be awarded reasonable attorney fees "in exceptional cases." [15 U.S.C. § 1117(a)]  The statute does not define the term "exceptional cases," but the Ninth Circuit has held that "attorneys' fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." [Rio Properties, Inc. v. Rio Int'l Interlink,

---

[1] Attorneys' fees in "exceptional" cases are also available to plaintiffs who opt to receive statutory damages under § 1117(c).  [Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 109-11, (2d Cir. 2012); followed by Ploom, Inc. v. Iploom, LLC, 2014 WL 1942218, at *8 (N.D. Cal. May 12, 2014); Stanley Black & Decker, Inc. v. D&L Elite Investments, LLC, 2014 WL 3728517, at *1 (N.D. Cal. July 28, 2014) (noting the split in authority and finding that both statutory damages and attorney's fees under the Lanham Act are recoverable if case is "exceptional" because "both the plain text and legislative history of Section 1117 indicate that election of statutory damages under Section 1117(c) does not preclude an award of attorney's fees under Section 1117(a) in exceptional cases."); see also Herman Miller Inc. v. Alphaville Design Inc., 2009 WL 3429739, at *10 (N.D. Cal. Oct. 22, 2009) (awarding both statutory damages under § 1117(c) and attorney's fees under § 1117(a) because defendant's infringement was willful)]

284 F.3d 1007, 1023 (9th Cir., 2002) (citing Playboy Enters., Inc. v. Baccarat Clothing Co., 692 F.2d 1272, 1276 (9th Cir., 1982)]

In the context of a default judgment, the Ninth Circuit has upheld awards of attorneys' fees "solely because, by entry of default judgment, the district court determined, as alleged in [plaintiffs'] complaint, that [defendant's] acts were committed knowingly, maliciously, and oppressively, and with an intent to ... injure [plaintiff]." [Derek Andrew, 528 F.3d at 702]  Here, Plaintiffs have alleged that Defaulting Defendants' "egregious conduct in selling infringing merchandise is willful and intentional." (FAC, ¶ 46) The Defaulting Defendants' failure to timely respond to the FAC and subsequent entry of default serve as admissions to these allegations.  [Id.; See e.g. Alu, Inc. v. Kupo Co., Inc., 2007 WL 177836, *5 (M.D. Fla., 2007)]  Thus Plaintiffs' are entitled to attorneys' fees.  [Wecosign, Inc. v. IFG Holdings, Inc., 845 F.Supp.2d 1072, 1086 (C.D. Cal. 2012) (attorneys' fees awarded in trademark infringement matter on default judgment where plaintiff pled "willful and deliberate")]

In the Central District of California, attorneys' fees on a default judgment are calculated pursuant to the schedule set forth in Local Rule 55-3.  Where the Plaintiff is seeking an award of over $100,000.00, as in this case, attorneys' fees are $5,600 plus 2% of the amount over $100,000.00.  Since Plaintiffs are seeking recovery in the amount of $1,000,000.00 the amount of reasonable attorneys' fees that should be awarded is **$23,600.00**.  Plaintiffs will submit a bill of costs within fourteen (14) days after entry of judgment in this action pursuant to Local Rule 54-2.1.

**D.    Plaintiffs are Entitled to Prejudgment Interest**

Plaintiffs are entitled to prejudgment interest on their trademark infringement claims.  [See 15 U.S.C. § 1117(b) (authorizing award of prejudgment interest in case involving use of a counterfeit mark); Brighton Collectibles, Inc. v. Coldwater Creek Inc., 2009 WL 160235, *5 (S.D. Cal. 2009)]

In California, Courts have applied a 7% statutory rate.  [Cal. Const. Art. 15, § 1; See Oracle USA, Inc. v. Qtrax, Inc., 2011 WL 4853436, *2 (N.D. Cal. 2011) citing to

1 <u>Pacific–Southern Mortg. Trust Co. v. Ins. Co. of N.Am.</u>, 166 Cal.App.3d 703, 716

2 (1985)  (in the absence of any legislative act to the contrary, the rate of prejudment

3 interest is 7%)]  Thus, Plaintiffs are entitled to **$114,300.88** in prejudgment interest

4 from December 14, 2013 (Date J&L sold Infringing Products to Boss) to August 03,

5 2015 (date of hearing on present Application)[2].

6        **E.**    **Plaintiffs are Entitled to a Permanent Injunction**

7       "The Lanham Act gives the court 'power to grant injunctions according to the

8 rules of equity and upon such terms as the court may deem reasonable, to prevent the

9 violation' of a mark holder's rights."  [<u>Pepsico</u>, 238 F. Supp. 2d at 1177; 15 U.S.C. §

10 1116(a) A plaintiff must demonstrate the following:

11
12       (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the
13 balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."
14

15 [<u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006)]

16       Absent injunctive relief, Plaintiffs will suffer irreparable harm to their brand and

17 reputation as Defendants' infringing conduct has and will continue. [See <u>Chanel, Inc.</u>

18 <u>v. Lin</u>, 2010 WL 2557503, *11 (N.D. Cal. 2010) (where plaintiff established likelihood

19 of confusion by showing defendants' use of counterfeit Chanel Marks, this gave rise to

20 a presumption that plaintiff would suffer irreparable harm if injunctive relief was not

21 granted]

22       Indeed, Defaulting Defendants have ignored the present lawsuit and have

23 continued their infringing activities. Considering the balance of hardships between

24 Plaintiffs and Defaulting Defendants, a remedy in equity is warranted - while Plaintiffs

25

26 [2] Principal Amount Due:  $1,000,000.00

27 Daily Interest:  ($1,000,000.00 × 0.07) ÷ 365 = $191.78

28 Interest Accrued from 12/14/2013 (Date J&L sold Infringing Products to Boss) through 08/03/2015 (Date of Hearing on Default Judgment) = $191.78× 596 days = $114,300.88

will suffer irreparable injury without an injunction, there would be no potential harm to Defaulting Defendants, as an injunction would still allow Defaulting Defendants to operate their business, albeit without the Infringing Products. [See Cadence Design Sys., Inc. v. Avant! Corp., 125 F.3d 824, 830 (9th Cir.1997) ("[A] defendant who knowingly infringes another's copyright cannot complain of the harm that will befall it when properly forced to desist from its infringing activities." (internal quotation marks omitted))] Finally, injunctive relief serves the public interest by preventing confusion as to the validity of a product and in preventing the "misappropriation of the skills, creative energies, and resources which are invested in the protected work." [Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1255 (3rd Cir. 1983); Atek 3000 Computer Inc., 2008 WL 2884761 at *5-6 (E.D.N.Y. 2008) ("[T]he public interest lies in the enforcement of the principles recognized by Congress in creating the [Copyright and Lanham] Acts, especially the prevention of consumer confusion")]

As such, Plaintiffs request that this Court issue a permanent injunction against Defaulting Defendants to enjoin them from further infringement of the E-Hose Marks and from unfairly competing with Plaintiffs.

**IV.   CONCLUSION**

Based upon the foregoing, Plaintiffs respectfully request that this Court enter default judgment in the amount of **$1,137,900.88** against Defendants J&L Wholesale Distributors and Boss Wholesale Corporation, in addition to the issuance of a Permanent Injunction against J&L and Boss and an award of costs of this action.

DATED:      June 12, 2015            BLAKELY LAW GROUP


By:   /s/ Jessica C. Covington
        Brent H. Blakely
        Cindy Chan
        Jessica C. Covington
        *Attorneys for Plaintiffs*
        *E-Hose Technologies LLC and*
        *PhD Marketing, Inc.*